UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALFONZO NEWELL,

          Plaintiff,                    Case No. 2:14-cv-172

v.                                        Honorable R. Allan Edgar

UNKNOWN BORGEN et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Alfonzo Newell is incarcerated with the Michigan Department of Corrections (MDOC) at Baraga Maximum Correctional Facility (AMF). He sues the following MDOC employees: Officer (unknown) Borgen and Sergeant Gene Granswger, who are located at AMF; and Administrative Hearings Officer Linda Maki, who is located in Lansing, Michigan.

According to the complaint, on May 30, 2014, Officer Borgen placed Plaintiff in administrative segregation for a "class two bondable misconduct." (Compl., docket #1, Page ID#2.) The following day, Officer Borgen wrote a misconduct ticket on Plaintiff for creating a disturbance. That afternoon, Sergeant Granswger reviewed the ticket with Plaintiff and elevated it to a "class one" misconduct. (*Id.*) Under MDOC Policy Directive 03.03.105, a "Class I" misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. *Id.* at ¶ B. On June 4, 2014, Hearing Officer Maki held a misconduct hearing and found Plaintiff guilty of the major misconduct charge.

Plaintiff claims that placement in segregation by Officer Borgen without a formal hearing violated MDOC policy and his right to due process. He further claims that the elevation of the misconduct charge to a class one misconduct without review of the relevant security video footage violated MDOC policy and Plaintiff's right to due process. Finally, Plaintiff claims that Hearing Officer Maki's decision to find Plaintiff guilty before guaranteeing him his procedural rights and without making findings on the specific charge at issue violated MDOC policy and Plaintiff's right to due process.

As a result of Defendants' conduct, Plaintiff claims that he lost (1) a prison record showing that he has been misconduct free for 14 months, (2) a recommendation from AMF officials

to transfer him to a lower security level, (3) employment as a food server, (4) a recommendation for "SOP, class opening," and (5) parole from prison. (Compl., Page ID#5.)

As relief, Plaintiff seeks compensation for the foregoing losses, expungement of the misconduct from his record, transfer to another prison facility,[1] and a recommendation for release on parole.

**Discussion**

    I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

---

[1] Specifically, Plaintiff requests transfer to one of two addresses. The addresses correspond to the locations of two MDOC facilities: Thumb Correctional Facility in LaPeer, Michigan, and Macomb Correctional Facility in New Haven, Michigan. (*See* Compl., docket #1, Page ID##5-6.)

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff claims that Defendants deprived him of due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff's claim fails because he does not allege a deprivation of a protected property or liberty interest. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim."). Plaintiff asserts the following potential interests: (1) he was confined in segregation by Defendant Borgen prior to a hearing on the misconduct charge, (2) Officer Granswger elevated the misconduct charge to a "class one" misconduct, (3) Officer Maki found him guilty of the charge, and as a result of that conviction,

Plaintiff (4) lost a recommendation for transfer to a different security level, (5) lost his prison job, (6) lost an opportunity to participate in prison programming, and (7) lost a possibility for release on parole.

### 1. Placement in administrative segregation

Plaintiff claims that Officer Borgen placed him in administrative segregation pending review of a misconduct charge against him. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,*

515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, or confinement in segregation for a relatively short period of time, does not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Likewise, Plaintiff's confinement in administrative segregation for approximately five days pending review of the misconduct charges is not atypical and significant and, thus, does not give rise to a protected liberty interest. Consequently, Plaintiff does not state a due process claim against Defendant Borgen.

2. Misconduct charges

Plaintiff also complains that Defendant Granswger improperly elevated the misconduct charges against him without reviewing the available evidence. The starting point for any discussion of the procedural due process rights of a prisoner subject to disciplinary proceedings is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process: (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Id.* at 563-69. If the prisoner received the procedural protections set forth in *Wolff*, and if there was "some evidence" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Walpole v. Hill*, 472 U.S. 445, 457 (1985). In short, *Wolff* requires that the state provide sufficient notice and an opportunity to be heard on misconduct charges that implicate a liberty interest. It does not require that an official to review the evidence supporting the charges before a hearing. Thus, Defendant Granswger did not violate Plaintiff's right to due process by elevating the misconduct

charges or failing to review available evidence regarding those charges before Plaintiff's misconduct hearing.

Furthermore, any claim that the charges were false or incorrect is barred by the finding of guilt in Plaintiff's misconduct proceedings. That finding has preclusive effect in this action. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). Thus, Plaintiff does not state a claim against Granswger.

### 3. Misconduct conviction

Plaintiff also complains that Defendant Maki found him guilty of the misconduct without making specific factual findings. In *Wolff*, the Supreme Court did not create a free-floating right to process for *all* prison disciplinary proceedings; rather, it held that the right to process arises when the prisoner faces a loss of liberty caused by forfeiture of good-time credits:

> The Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in the loss of good time credits, nor could he. Plaintiff was convicted of crimes occurring after April 1, 1987;[2] thus, he forfeits "disciplinary credits" when he is convicted of a misconduct, under a statute that abolished the "good time" scheme. *See* Mich. Comp. Laws § 800.33(5). In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the Court of Appeals for the Sixth Circuit held that the loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence; rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Thomas*, 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. *Nali*, 355 F. App'x at 912; *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

4. Consequences of misconduct conviction

Plaintiff alleges that he suffered various consequences as a result of his misconduct conviction. A prisoner convicted of a major misconduct typically would be confined in punitive segregation for a period of time, though Plaintiff does not indicate what punishment he received. In any event, for the reasons indicated *supra*, confinement in segregation gives rise to a right to due process only in extreme circumstances. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (thirteen years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484

---

[2] According to his MDOC profile, Plaintiff is incarcerated for an offense occurring in 2006. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=248931 (visited January 27, 2015).

(6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (an allegedly "indefinite" period of segregation–three years without an explanation from prison officials–could implicate a liberty interest). Plaintiff has not alleged any such extreme circumstances.

Instead, Plaintiff complains about other consequences, such as the loss of his job, the loss of a recommendation for transfer to a lower security level, the loss of an opportunity to participate in SOP programming, and the loss of a possibility for parole. The latter consequences do not implicate any constitutional rights, or give rise to a liberty interest protected by due process. With regard to transfer to another to a lower security level, prisoners have no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). Moreover, Plaintiff does not have a protected interest in transfer to less restrictive housing. Applying the standard in *Sandin*, the mere fact that Plaintiff remained in the same level of housing did not subject him to a significant, atypical deprivation.

Plaintiff also contends that he lost his prison job and the wages that accompany it, but prisoners have no constitutional right to prison employment or a particular prison job. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989). Furthermore, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Plaintiff complains that he lost an opportunity to participate in "SOP" programming, but it is well established that "[p]risoners have no constitutional right to rehabilitation, education, or jobs." *Argue v. Hofmayer*, 80 F. App'x 427, 429 (6th Cir. 2003) (citing *Rhodes v. Chapman*, 452

U.S. 337, 348 (1981)).  Moreover, "participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee." *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996); *see also Moody*, 429 U.S. at 88 n.9 (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss").  Thus, the inability to participate in prison programming did not deprive Plaintiff of a protected liberty interest.

Finally, Plaintiff contends that the misconduct conviction deprived him of an opportunity for parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law *entitles* an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  *Id.* at 1164-65; *accord Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Because Plaintiff has no liberty interest in obtaining parole in Michigan's discretionary scheme, he cannot claim that he was deprived of due process when the misconduct

conviction caused him to lose an opportunity for parole. Thus, for all the foregoing reasons, Plaintiff cannot bring a due process claim with regard to his misconduct proceedings.

### B. Prison Policies

Plaintiff claims that Defendants' actions violated MDOC policies. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, Plaintiff's assertion that Defendants failed to comply with MDOC policies is not sufficient to state a § 1983 claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  2/3/2015                             */s/ R. Allan Edgar*
                                             R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE